**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**GINGER B.,**

                    **Plaintiff,**

        **v.**                            **Civil Action 2:23-cv-2920**
                                         **Judge Edmund A. Sargus**
                                       **Magistrate Judge Kimberly A. Jolson**

**COMMISSIONER OF
SOCIAL SECURITY,**

                    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Ginger B., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the following reasons, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

## I.    BACKGROUND

Plaintiff filed her applications for DIB and SSI in April 2019, alleging disability beginning May 4, 2011, due to hyper mobility joint syndrome, fully fused spine (base of neck almost to tail bone), two severely deteriorated knees, dyslexia, fibromyalgia, depression, and anxiety. (R. at 798–99, 800–06, 859). After her applications were denied initially and on reconsideration, Administrative Law Judge Reuben Sheperd ("ALJ Sheperd") held a hearing on March 1, 2021. (R. at 477–521). Ultimately, he denied Plaintiff's applications in a written decision on March 30, 2021. (R. at 605–23). The Appeals Council granted Plaintiff's request for review and issued a remand order. (R. at 624–29). A new hearing was held on July 18, 2022. (R. at 440–76).

Administrative Law Judge Kimberly Cromer ("the ALJ") denied Plaintiff's applications for benefits in a written decision on March 30, 2021. (R. at 308–34). This time, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (R. at 1–7).

Plaintiff then brought this case. (Doc. 1). As required, the Commissioner filed the administrative record, and the matter has been fully briefed. (Docs. 7, 12, 14, 15).

### A.     Relevant Statements to the Agency

The ALJ summarized Plaintiff's function report presented to the agency relating to her mental health issues during the relevant period as follows:

> [Plaintiff] does not need reminders to take care of personal needs and grooming. She does not need reminders to take medication. She does not need reminders to go places. [Plaintiff] said she has difficulty following spoken directions, but she can follow written instructions easily. (Ex. 6E/4-6).
>
> [Plaintiff] gets along well with authority figures. She has never been fired from a job due to difficulty getting along with people. (Ex. 6E/7).
>
> [Plaintiff] said she can only pay attention for 10 minutes. She said she does not always finish what she starts. She said she does not handle stress or changes in routine well. (Ex. 6E/6-7).
>
> [Plaintiff] has a driver's license and is able to drive short distances. She prepares simple meals. She can do laundry and cleaning. She goes grocery shopping with her children. (Ex. 6F/5). [Plaintiff] can pay bills, count change, handle a savings account, and use a checkbook. (Ex. 6E/3).

(R. at 317–18).

### B.     Relevant Medical Evidence

The ALJ also summarized Plaintiff's medical records and symptoms related to her mental health issues during the relevant period:

> As for [Plaintiff]'s mental health, the record documents [Plaintiff] with a history of anxiety, depression and ADHD. (Exs. 1F/2, 14; 6F/2, 6; 18F/4). On mental status examination in November 2017, [Plaintiff] was assessed by examiners as alert and

2

cooperative. Mood and affect were normal. Attention and concentration were normal. (Ex. 11F/12).

Marc Miller, Ph.D., conducted a consultative examination in June 2019. (Ex. 6F). On mental status examination, [Plaintiff] was described average in appearance and grooming. Her hygiene was good. [Plaintiff] was articulate in describing her medical issues. Behavior indicated a cooperative, mannerly individual. No impulsivity or animated behavior was noted. [Plaintiff]'s attention span noted somewhat difficulty, possibly due to ADHD. Her eye contact was good. No hypervigilance was noted. There was no looseness of thought or tangential thinking. Insight and judgment were assessed as "good." (Ex. 6F/3).

On mental status examination in July 2019, [Plaintiff] was alert and oriented to person, place, and time. Her mood was normal. In August 2019, memory was intact. Organization, problem solving, and attention were intact. (Ex. 8F/4, 17). On mental status examination in December 2019, [Plaintiff] was alert and oriented. Speech was fluent. Thought processes were coherent. Her insight was good. Cognitive functions were intact. Affect was appropriate. (Ex. 9F/9). In November 2020, mood and affect were normal. (Ex. 18F/5). On mental status examination in January 2021, [Plaintiff] was alert and oriented. She presented as anxious with a congruent affect. Her speech was clear and coherent. Attention and concentration were poor; however, thoughts were logical and goal directed. Memory was intact. (Ex. 19F/24).

Similarly, on exam in October 2021, [Plaintiff] had intact memory, judgment, and insight. (Ex. 29F/10). Mood and affect were normal. Speech was intact. (Ex. 29F/10-11). On mental status exam in November 2021, [Plaintiff] was somewhat anxious. However, she was alert and oriented. Thoughts were logical and goal directed. Speech was clear and coherent. [Plaintiff] was talkative and engaged in spontaneous conversation. She was pleasant and cooperative. Concentration was good. Memory was intact for recent and remote events. (Ex. 34F/927). Again, in January 2022, mental status examination was generally unremarkable. (Ex. 34F/1059).

On mental status examination in April 2022, [Plaintiff] was alert and oriented. (Ex. 39F/9). Thoughts were logical and goal directed. She presented with an euthymic mood and reactive affect. Speech was clear and coherent. She was pleasant and cooperative. [Plaintiff] was talkative and engaged in spontaneous conversation. Her concentration was good. Memory was intact for recent and remote events. (Ex. 39F/9). [Plaintiff] is not psychotic or manic. She denies hopelessness and helplessness. (Exs. 34F/210; 39F/34). The limitations for simple, routine tasks in the residual functional capacity above sufficiently accommodate the overall clinical findings of record when considered in conjunction with [Plaintiff]'s testimony.

*** [T]he medical records reveal that the medications have been relatively effective in controlling [Plaintiff]'s symptoms. [Plaintiff]'s depression and anxiety are stable

3

on Effexor and Cymbalta. (Ex. 18F/5). Xanax, Klonopin, and Valium have all been helpful for her anxiety. (Ex. 34F/79). [Plaintiff] has also taken Vyvanse, which is "very helpful" in managing her anxiety. (Ex. 39F/8). Her anxiety and depressed are noted to be controlled. (Ex. 27F/11). She has also used medical marijuana, which has helped with anxiety and pain. (Ex. 34F/210). [Plaintiff] has been doing "much better" with anxiety. (Ex. 34F/293). ***

(R. at 321–22).

## C.    The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirement through December 31, 2017. (R. at 314). She engaged in substantial gainful activity during the following periods: May 2011 through December 2013, January 2019 through June 2019, and January to December 2020. (*Id.*). Still, there was a continuous 12-month period(s) during which Plaintiff did not engage in substantial gainful activity. (R. at 315). The ALJ also determined that Plaintiff has the following severe impairments: Ehlers-Danlos syndrome, joint hypermobility; fibromyalgia; osteoarthritis, bilateral knees; idiopathic scoliosis and lumbar spondylosis; chronic pain syndrome; generalized anxiety disorder; ADHD; and dysthymic disorder. (*Id.*). The ALJ found that none of Plaintiff's impairments, either singly or in combination, meets or medically equals a listed impairment. (R. at 316).

The ALJ assessed Plaintiff's residual functional capacity ("RFC") as follows:

After careful consideration of the entire record, [the ALJ] finds that the [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can never climb ladders, ropes, and scaffolds; occasionally climb ramps/stairs; occasionally balance, stoop, kneel, and crouch; never crawl. She can never work at unprotected heights, or around hazardous machinery. No commercial driving. [Plaintiff] can frequently handle and finger bilaterally. She can perform simple, routine tasks. She can have no tandem work or work with the general public as part of routine job duties. She can have only occasional interaction with coworkers or supervisors. She requires end of day work goals rather than strict, hourly production requirements. [Plaintiff] should not work in a fast-paced assembly line work where the machine is setting the pace and

4

she should only have occasional changes in the work setting.

(R. at 318).

As for Plaintiff's symptoms, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"  (R. at 319).

The ALJ determined that Plaintiff is unable to perform her past relevant work as a sales representative, leasing agent, beauty supplies sales, or beauty culturist, composite with a receptionist.  (R. at 325).  But, relying on testimony from a Vocational Expert ("VE"), the ALJ to determined Plaintiff could perform other work that existed in significant numbers in the national economy, such as a document preparer, addresser, or table worker.  (R. at 325–26).  Consequently, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since May 4, 2011.  (R. at 326).

## II.    STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards."  *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g).  "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  The Commissioner's findings of fact must also be based upon the record as a whole.  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).  To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision.  *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL

4881574, at *2 (S.D. Ohio Aug. 17, 2015). But "[i]f the ALJ commits an error of law, the court must reverse and remand, 'even if the factual determinations are otherwise supported by substantial evidence and the outcome on remand is unlikely to be different.'" *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (quoting *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 859 (6th Cir. 2011)).

## III.    DISCUSSION

Plaintiff challenges the ALJ's treatment of the medical opinion of Dr. Kimberly Kohli, Plaintiff's mental health provider. (Doc. 12 at 9). More specifically, Plaintiff says that the ALJ improperly considered Dr. Kohli's medical source statement that opined Plaintiff was seriously limited in various areas of mental functioning. (*Id.* at 9–13). The Commissioner counters that the ALJ properly evaluated the supportability and consistency of Dr. Kohli's opinion, and substantial evidence supports the ALJ's conclusion. (*See* Doc. 14 at 4–12).

A claimant's RFC is an assessment of "the most [a claimant can still do despite [her]] limitations." 20 C.F.R. § 404.1545(a)(1) (2012). A plaintiff's RFC assessment must be based on all the relevant evidence in her file. *Id*. The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.[1] 20 C.F.R. § 404.1513(a)(1)–(5). As for medical opinions and prior administrative findings, an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight,

---

[1] The regulations define prior administrative findings:

> A prior administrative finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (*see* § 416.1400) in your current claim based on their review of the evidence in your case record . . .

§ 404.1513(a)(2), (5).

to any medical opinion(s) or prior administrative finding(s) including those from [the [Plaintiff]'s] medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must consider: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(1)–(5). Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. 20 C.F.R. § 404.1520c(b)(2).

When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and non-medical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(2). And, although an ALJ may discuss how she evaluated the other factors, she is generally not required to do so. *Id*. If, however, an ALJ "find[s] that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ will] articulate how [she] considered the other most persuasive factors . . . ." 20 C.F.R. § 404.1520c(b)(3).

Here, the ALJ evaluated Dr. Kohli's opinion at the same time she evaluated the opinion of another one of Plaintiff's providers. About their opinions, the ALJ said:

> Dr. Daniel DiSalvo and Kimberly Kohli, Ph.D. opined the claimant had serious limitations in several areas of mental functioning and would miss 4 days of work per month. (Exs. 19F/11-12; 20F-21F). This is not persuasive. The opinions are not supported; Dr. DiSalvo and Dr. Kohli merely checked off boxes on a form rather than provide an explanation for the limitations given. The terms "limited,"

"satisfactory," and "seriously" are not in vocationally specific language. Regardless, they were considered but when considered against the record evidence, these more extreme assessment could not be found persuasive. For example, the claimant was assessed with normal mental status examinations multiple dates and times in the record. Specifically, on mental status examination, the claimant was articulate in describing her medical issues. Behavior indicated a cooperative, mannerly individual. There was no indication of impulsivity or animated behavior was noted. The claimant's eye contact was good. No hypervigilance was noted and there was no looseness of thought or tangential thinking. Insight and judgment were good. (Ex. 6F/3). The claimant was described by examining sources as alert and oriented. Thought processes were coherent and her insight was good. Cognitive functions were intact. Affect was appropriate. (Ex. 9F/9; 18F/5). Thoughts were logical and goal directed. Memory was intact. Concentration was good. (Exs. 19F/24; 34F/927, 1059). Given these findings, the more extreme assessments described by Drs. DiSalvo and Kohli could not be considered persuasive in accordance with 20 CFR 404.1520b(c) and 416.920b(c).

(R. at 324).

The opinion the ALJ discusses above refers to a "Medical Opinion Re: Ability to do Work-Related Activities (Mental)" form Dr. Kohli completed for Plaintiff in January 2021 ("Mental Ability form"). (R. at 1798–99). The checklist-type form allows the provider to rate a patient's "ability to do work-related activities on a day-to-day basis in a regular work setting . . . ." (R. at 1798 (emphasis omitted)). Dr. Kohli rated Plaintiff on 26 mental abilities and aptitudes on a five-point scale that ranged from: "unlimited or very good"; "limited but satisfactory"; "seriously limited"; "unable to meet competitive standards"; and "no useful ability to function." (R. at 1798–99). The form defined each rating in terms of the percentage of time a patient would have noticeable difficulty performing the mental ability.[2] (Id.). Dr. Kohli rated Plaintiff "seriously limited" in her ability to perform at a consistent pace without an unreasonable number and length of rest periods, respond appropriately to changes in a routine work setting, and deal with normal work stress. (Id.). She rated Plaintiff as ranging from "limited but satisfactory" to "seriously

---

[2] "*Limited but satisfactory* means your patient has noticeable difficulty (e.g., distracted from job activity) no more than 10 percent of the workday or work week . . . *Seriously limited* means your patient has noticeable difficulty (e.g., distracted from job activity) from 11 to 20 percent of the workday or work week." (R. at 1798).

limited" in her ability to remember work-like procedures, maintain attention for two-hour segments, work in coordination with or in proximity to others without being unduly distracted, get along with co-workers or peers, understand and remember detailed instructions, carry out detailed instructions, and maintain socially appropriate behavior. (R. at 1798–99). Dr. Kohli also indicated that Plaintiff would need to miss more than four days of work per month due to her impairments or treatment. (R. at 1799).

Dr. Kohli provided brief explanations for her ratings. After rating Plaintiff on sixteen abilities related to unskilled work, Dr. Kohli said: "[Plaintiff] demonstrates great difficulty with ability to focus and concentrate, as well as memory difficulty. Symptoms of anxiety and depression appear to significantly impact ability to complete activities of daily living. Difficulty with focus, concentration, and memory appear to be result of anxiety and depression." (R. at 1798). Following her rating of four abilities related to semiskilled and skilled work, Dr. Kohli stated: "[Plaintiff] has difficulty with completing tasks due to current symptoms of anxiety and depression. Ability to manage stress would be very limited." (R. at 1799). As an overall comment, Dr. Kohli wrote: "[Plaintiff] reports chronic pain which exacerbates symptoms of anxiety and depression." (*Id.*). The Undersigned discusses the ALJ's treatment of this medical opinion below.

### A. Supportability

In evaluating the supportability of a medical opinion, an ALJ must evaluate the objective medical evidence, as well as the support for that opinion and strength of the evidence on which the medical source based their conclusions. *Stacie B. v. Comm'r of Soc. Sec.*, No. 2:21-CV-4650, 2022 WL 1793149, at *6 (S.D. Ohio, June 2, 2022), *report and recommendation adopted*, No. 2:21-CV-4650, 2022 WL 2237057 (S.D. Ohio June 22, 2022). Only "a minimum level of articulation is needed to provide sufficient rationale for a reviewing court." *Id.* (internal quotations

omitted).  Nevertheless, an ALJ is required to "build an accurate and logical bridge between the evidence and [her] conclusion." *Timmons v. Comm'r of Soc. Sec.*, No. 2:19-CV-3, 2019 WL 5445510, at *3 (S.D. Ohio Oct. 24, 2019).

Here, the Court agrees with Plaintiff that the ALJ failed to sufficiently articulate the supportability of Dr. Kohli's opinion.  The ALJ provided that Dr. Kohli "merely checked off boxes on a form rather than provide an explanation for the limitations given."  (R. at 324).  To be sure, courts in this Circuit have evaluated the limitations of checklist-type medical opinions that include little or no explanation or citation support.  *See, e.g.*, *Lorraine S. v. Comm'r of Soc. Sec.*, No. 2:22-CV-2257, 2022 WL 17335383, at *7 (S.D. Ohio Nov. 30, 2022), *report and recommendation adopted*, No. 2:22-CV-2257, 2023 WL 5349521 (S.D. Ohio Aug. 21, 2023); *Pettigrew v. Berryhill*, No. 1:17-CV-01118, 2018 WL 3104229, at *13 (N.D. Ohio June 4, 2018) (collecting cases), *report and recommendation adopted*, No. 1:17CV1118, 2018 WL 3093696 (N.D. Ohio June 22, 2018).  And as the Commissioner points out, Dr. Kohli's general comments did not provide a specific explanation for each checked limitation.  (*See* Doc. 14 at 9).  But that was not the logic the ALJ provided.  To say Dr. Kohli "merely checked off boxes" is not an accurate representation of the opinion given her supporting comments.

As detailed above, Dr. Kohli provided explanation for the opined mental limitations, citing Plaintiff's depression and anxiety; difficulty in focus, concentration, and memory; and limitations in ability to manage stress.  (R. at 1798–99).  Yet, the ALJ ignored these supporting explanations. Further, the ALJ's only reference to the objective treatment notes Dr. Kohli made prior to forming her opinion was that she evaluated Plaintiff as having logical and goal-directed thoughts and an intact memory earlier in January 2021.  (R. at 324, citing R. at 1570).  While this may touch on the supportability of the one opined limitation related to memory, this alone does little to articulate

why the entirety of the opinion was unsupported.  This is especially true when those same notes categorize Plaintiff's attention and concentration as poor, list anxiety and depression as ongoing issues, and make note of Plaintiff's social anxiety.  (R. at 1568–70; *see also* R. at 1732–34 (December 2020 session with Dr. Kohli discussing, *inter alia*, Plaintiff being distracted and having difficulty concentrating on physical examination)).

The only part of Dr. Kohli's opinion that was merely a checked box without support was her assessment that Plaintiff would miss more than four days per month of work due to her impairments or treatments.  (R. at 1799).  So, the ALJ's logic extends there, where Dr. Kohli did not connect that finding to an explanation.  But that logic does not extend to the rest of the opinion that contained some supporting comments.  In short, the ALJ failed to properly articulate the supportability of Dr. Kohli's opined limitations.

Still, finding an articulation error "does not mean reversal is required" if the error was harmless.  *Tracy F. v. Comm'r of Soc. Sec.*, No. 2:23-CV-00188, 2023 WL 8614065, at *7 (S.D. Ohio Dec. 13, 2023) (citing *Howard H. v. Comm'r of Soc. Sec.*, No. 2:20-CV-4932, 2022 WL 765217, at *3–4 (S.D. Ohio Mar. 14, 2022)), *report and recommendation adopted*, No. 2:23-CV-00188, 2024 WL 689322 (S.D. Ohio Feb. 20, 2024).  In *Howard H.*, the Court determined that an ALJ's failure to set forth a minimum level of articulation of the supportability factor did not require reversal because the medical opinion in question was not "stated using vocationally relevant terms . . ., as would guide the ALJ to a more limited residual functional capacity than the one she crafted."  2022 WL 765217, at *4 (internal citation and quotation marks omitted).

To this end, the Undersigned must consider ALJ's other notation about why Dr. Kohli's opined limitations lack persuasive value: "The terms 'limited,' 'satisfactory,' and 'seriously' are not in vocationally specific language."  (R. at 324).  Plaintiff concedes that this could be true.

(Doc. 12 at 11 ("While that may be true, it is not a reason to discredit Dr. Kohli's opinions.").  But she says the Mental Ability form defined those terms in percentages to cure the defect, giving the ALJ a clear and unambiguous picture of the restrictions opined by Dr. Kohli.  (*Id.*).  And, Plaintiff says, if the ALJ had not diminished the persuasiveness of this opinion for using vocationally unspecific language, the opinion "would have ultimately altered the entire outcome of the case." (*See* Doc. 15 at 5).  The Commissioner responds that the ALJ was under no obligation to recognize percentages as vocationally specific language or adopt vague terms.  (Doc. 14 at 9–10).

At the outset, the Undersigned notes that the ALJ does not provide a reason why the terms on the Mental Ability form were not vocationally specific.  Indeed, it is unclear from the ALJ's opinion if she even considered the defined percentages assigned to the terms or not.  Therefore, it is difficult to adequately review this issue.

Precedent does not require an ALJ to adopt vague terms.  *See Quisenberry v. Comm'r of Soc. Sec.*, 757 F. App'x 422, 434 (6th Cir. 2018); *Michael C. o/b/o E.K.C. v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-511, 2022 WL 3584361 (S.D. Ohio Aug. 22, 2022) (noting an ALJ properly found an opinion unpersuasive when it did not contain specific limitations).  But it is not clear based on precedent that a term is too vague to support a specific functional limitation if the opinion provides a definition.  A definition like the one at issue here could aid the ALJ in putting restrictions into vocationally relevant language that are phrased in terms of the most someone can do under 20 C.F.R. § 404.1545.  *Cf. Quisenberry v. Comm'r of Soc. Sec.*, 757 F. App'x 422 (6th Cir. 2018) (agreeing that an opinion saying a plaintiff "was seen and treated . . . and is unable to work/attend school" was vague and did not describe specific functional limitations); *Howard H.*, 2022 WL 765217, at *4 (noting an opinion that a plaintiff had a "somewhat elevated risk" in various workplace functions was not stated in vocationally relevant terms); *Bobbie N. E. v.*

*Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-524, 2022 WL 4151752, at *4 (S.D. Ohio Sept. 13, 2022) ("These stray recommendations for Plaintiff to elevate her leg without any detail as to when or how long she should engage in this activity are too vague to constitute medical opinions or support specific functional limitations.").  To this point, other ALJs around the country have considered seemingly the same Mental Ability form without comment on the vocational specificity of the terms used.  *See, e.g.*, *Rebecca C. v. Kijakazi*, No. 3:21CV1125 (MPS), 2022 WL 4545846, at *7–8 (D. Conn. Sept. 29, 2022); *Wiley v. Comm'r of Soc. Sec.*, No. 6:17-CV-97-ORL-GJK, 2018 WL 1933703, at *3 (M.D. Fla. Apr. 24, 2018); *Martin v. Berryhill*, No. CV 16-2630, 2018 WL 1079613, at *9–10 (E.D. Pa. Jan. 26, 2018), *report and recommendation adopted*, No. CV 16-2630, 2018 WL 1071880 (E.D. Pa. Feb. 27, 2018); *Martinez v. Colvin*, No. CV 16-211 GJF, 2016 WL 8230658, *5–6 (D.N.M. Dec. 19, 2016); *Luna v. Colvin*, No. 3:14CV00145 (HBF), 2016 WL 4408987, at *7 (D. Conn. Aug. 17, 2016).  Therefore, the Undersigned cannot follow the ALJ's logic without more clarity as to why the terms are not vocationally specific in light of the provided definitions.

Accordingly, it cannot be definitively said that Dr. Kohli's opinion did not use vocationally specific terms "as would guide the ALJ to a more limited residual functional capacity than the one she crafted." *Howard H.*, 2022 WL 765217, at *4.  For example, Dr. Kohli opined that Plaintiff was "seriously limited" in performing at a consistent pace without an unreasonable number and length of rest periods, meaning she would experience this difficulty from 11% to 20% of the workday or work week.  (R. at 1798).  And she opined Plaintiff ranged from "limited but satisfactory" to "seriously limited" in her ability to maintain attention for two-hour segments, meaning she would experience this difficulty up to 20% of the workday or work week.  (*Id.*).  Moreover, the VE testified at Plaintiff's disability hearing that an individual can be "off task no

greater than 14% of the workday" and can generally only miss one day per month to maintain employment in the national economy.  (R. at 516–17).  Had the ALJ given credence to Dr. Kohli's opinion, there remains room in Plaintiff's RFC for further mental limitations or the potential of a different outcome all together.  (*See* R. 318 (including in the RFC mental limitations for: simple, routine tasks; no tandem work or work with the general public; only occasional interaction with coworkers or supervisors; end of day work goals; no work in a fast-paced assembly line work; and only have occasional changes in the work setting)).

At base, the ALJ did not evaluate Dr. Kohli's opinion in accordance with the regulations. The Commissioner responds by arguing that substantial evidence supports the RFC.  (*See generally* Doc. 14).  In other words, the Commissioner wants the Court to look past the error and find that the RFC otherwise has support.  But the ALJ's "failure to follow agency rules and regulations 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'"  *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009)).  And while there may be evidence in the record upon which the ALJ could have relied to find Dr. Kohli's opinion unsupported and unpersuasive, the ALJ must still provide a "coherent explanation of [her] reasoning." *Stacie B.*, 2022 WL 1793149, at *7 (S.D. Ohio June 2, 2022) (citing *Hardy v. Comm'r of Soc. Sec.*, No. 20-10918, 2021 WL 3702170, at *4 (E.D. Mich. Aug. 13, 2021)).  Because the ALJ has failed to provide that articulation, substantial evidence does not support her determination that this opinion was unpersuasive, nor the ultimate RFC determination.

### B. Consistency

In contrast, the ALJ properly evaluated the consistency of Dr. Kohli's opinion when she compared the limitations found therein against the rest of the record, including Dr. Kohli's

subsequent treatment notes.  She observed that the record contained evidence that Plaintiff was assessed as having "normal mental status examinations [at] multiple dates and times in the record." (R. at 324; *see, e.g.*, 1228, 1810, 2006, 4543, 4721, 4849, 6155).  She specifically noted that during a psychological evaluation, Plaintiff was articulate in discussing her medical issues, was cooperative and mannerly, did not indicate impulsivity or animated behavior, did not display looseness of thought or tangential thinking, made good eye contact, displayed good insight and judgment, and was not hypervigilant.  (*Id.*, citing 1148–49).  The ALJ further went on to highlight that Plaintiff was also assessed by examining sources as alert and oriented with coherent thought processes and good insight and as having intact cognitive functions and appropriate affect.  (*Id.*, citing 1228, 1529).  When evaluating the medical evidence, the ALJ also noted other examinations that documented much of the same, with only some variability in Plaintiff's attention, concentration, and mood.  (R. at 321–22, citing *e.g.*, R. at 1334, 1170, 1183, 3404, 4543, 5260 (Dr. Kohli notes from November 2021 session), 5392, 6013 (Dr. Kohli notes from April 2022 session), 6038).  Moreover, as the ALJ also highlighted when evaluating the medical evidence, Plaintiff reported to Dr. Kohli that her anxiety medications were helpful, and her anxiety was "much better." (R. at 322, citing R. at 4412 (notes from May 2021 session), R. at 4626 (notes from July 2021 session), R. at 6012 (notes from April 2022 session)).  Therefore, when viewed as a whole, the ALJ's consistency determination is supported by the record and enabled review.

In sum, although the ALJ properly evaluated the consistency of Dr. Kohli's opinion, she failed to adequately articulate its supportability.  This is not to say the ALJ will find Dr. Kohli's opinion sufficiently supported or ultimately persuasive.  But because the ALJ did not comply with the regulations, remand is recommended to allow proper consideration of Dr. Kohli's opinion.

## IV.    CONCLUSION

Based on the foregoing, it is **RECOMMENDED** the Court **SUSTAIN** Plaintiff's Statement of Errors (Doc. 12) and **REVERSE** the Commissioner's non-disability finding and **REMAND** this case to the Commissioner and Administrative Law Judge under Sentence Four of § 405(g).

<u>**PROCEDURE ON OBJECTIONS**</u>

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo* and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date:   April 10, 2024                                   /s/ Kimberly A. Jolson
                                                         KIMBERLY A. JOLSON
                                                         UNITED STATES MAGISTRATE JUDGE